[Cite as *Polhamus v. Robinson*, 2017-Ohio-39.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

EMILY POLHAMUS,

    PETITIONER-APPELLEE,          CASE NO. 8-16-11

    v.

VIOLET M. ROBINSON,

    RESPONDENT-APPELLEE,
    -and-                      O P I N I O N

OLIVER M. GUTIERREZ,

    RESPONDENT-APPELLANT.

Appeal from Logan County Common Pleas Court
Family Court - Juvenile Division
Trial Court No. 10 AD 109

**Judgment Affirmed**

Date of Decision: January 9, 2017

APPEARANCES:

    *Miranda A. Warren* for Appellant

    *Natalie J. Bahan* for Appellee, Emily Polhamus

**PRESTON, P.J.**

{¶1} Respondent-appellant, Oliver M. Gutierrez ("Oliver"), appeals the May 11, 2016 decision of the Logan County Court of Common Pleas, Family Court—Juvenile Division, denying his motion requesting the trial court to award him legal and residential custody of his daughter, M.G. For the reasons that follow, we affirm.

{¶2} This case stems from a shared-custody agreement executed between Oliver, respondent-appellee, Violet M. Robinson ("Violet"), M.G.'s mother, and petitioner-appellee, Emily Polhamus ("Emily"), M.G.'s maternal aunt, in which they agreed to share legal custody of M.G. with Emily having residential custody of M.G. M.G. was born in 2004 to Oliver and Violet during their marriage. (Doc. No. 1). In 2007, Violet, who had previously separated from Oliver, was diagnosed with Crohn's disease. (June 5, 2015 Tr. at 7). Because of Violet's illness and financial instability, Emily offered to care for M.G. (*Id.* at 8). Violet and Emily could not initially locate Oliver but eventually found him living and working under an assumed alias. (*Id.* at 83, 89, 127). Emily consulted an attorney who advised her that the parties could privately execute a shared-custody agreement to reflect the parties' agreement regarding the care and custody of M.G. (*Id.* at 83-84, 126). The parties executed a shared-custody agreement (the "shared-custody agreement") reflecting that Oliver, Violet, and Emily would share legal custody of M.G. with

Emily having residential custody of M.G.[1]  (*See id.* at 10, 17, 83); (Feb. 24, 2015 Tr. at 9-10).

**{¶3}** Emily filed with the Russell County, Virginia Juvenile and Domestic Relations Court the out-of-court-shared-custody agreement executed by the parties, and that court issued on March 2, 2007 an agreed order reflecting the shared-custody agreement of the parties.  (*See* Doc. Nos. 1, 3).  (*See also* June 5, 2015 Tr. at 83).

**{¶4}** On June 15, 2010, Emily filed with the Logan County Court of Common Pleas, Family Court—Juvenile Division, a "Petition to Register Foreign Custody Decree."  (Doc. No. 1).  On November 15, 2010, the trial court granted Emily's petition and registered the foreign custody decree.  (Doc. No. 12).

**{¶5}** On June 20, 2011, Oliver filed a "Notice of Submission of Order" and submitted to the trial court a September 7, 2010 order of the Russell County court modifying the March 2, 2007 order regarding Violet's visitation time.  (Doc. No. 14).

**{¶6}** On July 13, 2011, Oliver filed a motion to modify Violet's visitation time with M.G.  (Doc. No. 15).  In that motion, Oliver did "not seek to modify the rights of [Emily] and believe[d] she is a stable and positive influence on [M.G.]"

---

[1] The shared-custody agreement was executed in Russell County, Virginia where Oliver and Violet were residing at that time. (June 5, 2015 Tr. at 9, 12).  At the time the parties executed that agreement, Emily was living in Bellefontaine, Ohio.  (*Id*. at 10, 82).

(*Id.*). Violet filed on August 11, 2011 an "Objection" to Oliver's motion. (Doc. No. 27).

{¶7} On August 22, 2012, the parties entered an "Agreed Judgment Entry" (the "agreed-custody entry") in which, in part, they agreed to continue to share legal custody of M.G. with Emily continuing to have residential custody of M.G. (Doc. No. 62).

{¶8} On January 27, 2014, Oliver filed a "Motion for Reallocation of Parental Rights and Responsibilities" asking that the trial court grant him legal and residential custody of M.G. (Doc. No. 65). On February 21, 2014, Emily filed a memorandum in opposition to Oliver's motion. (Doc. No. 79). On February 27, 2014, Violet filed an "Answer and Objection" to Oliver's motion. (Doc. No. 81).

{¶9} On June 4, 2014, the trial court appointed a guardian ad litem ("GAL") for M.G. (Doc. No. 109). The GAL filed his report on February 12, 2015. (Doc. No. 126).

{¶10} On July 31, 2014, Oliver filed an addendum to his motion, clarifying that he was "requesting that custody of [M.G.] be allocated, not reallocated." (Doc. No. 113).

{¶11} After hearings on February 24, 2015 and June 5, 2015, the magistrate issued his decision on December 17, 2015, concluding that Oliver and Violet forfeited their paramount right to custody of M.G; that no change of circumstances

occurred; and that it is in M.G.'s best interest that Emily be M.G.'s "primary caretaker" if Emily can legally fill that role. (Doc. Nos. 137, 142).

{¶12} On March 21, 2016, Oliver filed his objections to the magistrate's decision. (Doc. No. 143). On May 11, 2016, the trial court overruled Oliver's objections to the magistrate's decision and adopted the magistrate's decision—namely, that Oliver and Violet forfeited their paramount right to custody of M.G. and that no change in circumstances occurred necessitating a modification of the agreed-custody entry. (Doc. No. 144).

{¶13} Oliver filed his notice of appeal on June 6, 2016. (Doc. No. 145). He raises three assignments of error for our review. For ease of our discussion, we first address together Oliver's first and second assignments of error, then his third assignment error.

### Assignment of Error No. I

**It was an Abuse of Discretion and Against the Manifest Weight of the Evidence When the Trial Court Found that the Appellant Forfeited His Paramount Right of Custody of Their [sic] Child by Contract (Physical Custody) and by Abandonment (Legal Custody).**

### Assignment of Error No. II

**It was an Abuse of Discretion and Against the Manifest Weight of the Evidence When the Trial Court Failed to Apply All Criteria of In Re Perales and Denied Custody of the Minor Child to the Appellant.**

{¶14} In his first and second assignments of error, Oliver argues that the trial court abused its discretion by concluding that he forfeited his paramount right to custody of M.G. Stated differently, Oliver challenges the trial court's parental-suitability conclusion. In particular, he argues that the trial court abused its discretion by concluding that he is an unsuitable parent because he forfeited his paramount right to custody of M.G. by executing the shared-custody agreement and by abandoning M.G. Oliver further argues that the trial court failed to apply the *In re Perales* criteria in its parental-suitability determination. 52 Ohio St.2d 89 (1977).

{¶15} As an initial matter, we note that "the juvenile court has exclusive original jurisdiction to determine the custody of a child who is not a ward of another Ohio court." *Redmond v. Davis*, 7th Dist. Columbiana No. 14 CO 37, 2015-Ohio-1198, ¶ 33, citing R.C. 2151.23(A)(2). *See also Rowell v. Smith*, 10th Dist. Franklin No. 12AP-802, 2013-Ohio-2216, ¶ 57. A juvenile court is to exercise its jurisdiction in a child-custody matter in accordance with R.C. 3109.04. R.C. 2151.23(F)(1).

{¶16} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'"Where an award of custody is supported by a substantial amount of credible and competent

evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.""" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶17}** In this case, Oliver, M.G.'s parent, disputes the trial court's decision granting Emily, a nonparent, custody of M.G. "It is without question that parents have a constitutionally protected due process right to make decisions concerning the care, custody, and control of their children, and the parents' right to custody of their children is paramount to any custodial interest in the children asserted by nonparents." *Rowell* at ¶ 27, citing *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 11, citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000), and citing *In re Murray*, 52 Ohio St.3d 155, 157 (1990) and *Clark v. Bayer,* 32 Ohio St. 299, 310 (1877). "[A] 'suitable' parent has a 'paramount right' to the custody of their minor child 'unless they forfeit that right by contract, abandonment, or by becoming totally

unable to care for and support those children.'" *Redmond* at ¶ 34, quoting *In re Perales*, 52 Ohio St.2d at 97, citing *Clark* at 310, and citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 65 (1986).

**{¶18}** "Equally well-settled under Ohio law is the principle that a parent may voluntarily share with a nonparent the care, custody, and control of his or her child through a valid shared-custody agreement." *Rowell* at ¶ 27, citing *Mullen* at ¶ 11, citing *In re Bonfield*, 97 Ohio St.3d 387, 2002-Ohio-6660, ¶ 50 and R.C. 2151.23(A)(2), and citing *State ex rel. M.L.G. v. Montgomery*, 10th Dist. Franklin No. 12AP-13, 2012-Ohio-3591, ¶ 21. "The essence of a voluntary shared custody agreement between a parent and nonparent is the purposeful relinquishment of some portion of the parent's right to exclusive custody of the child." *Id.*, citing *Mullen* at ¶ 11. "'A shared-custody agreement recognizes the general principle that a parent can grant custody rights to a nonparent and will be bound by the agreement.'" *Id.*, quoting *Mullen* at ¶ 11, citing *Bonfield* at ¶ 48, citing *Masitto* at 65, and citing *Clark* at paragraphs two and three of the syllabus (recognizing that a parent's grant of custody to a nonparent through an agreement is lawful and enforceable).

**{¶19}** In his first two assignments of error, Oliver argues that the trial court abused its discretion by concluding that he forfeited his paramount right to custody of M.G. "Whether a parent has voluntarily relinquished the right to custody is a factual question to be proven by a preponderance of the evidence." *Id.* at ¶ 30, citing

*Mullen* at ¶ 14, citing *In re Perales* at syllabus and *Reynolds v. Goll*, 75 Ohio St.3d 121, 123 (1996), and citing *Penna v. Rowe*, 11th Dist. Portage No. 2012-P-0026, 2012-Ohio-5442, ¶ 20 (in an R.C. 2151.23(A)(2) custody proceeding between a parent and a nonparent, unsuitability is determined by a preponderance of the evidence). "The determination of whether a '"parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding."'" *Id.*, quoting *Mullen* at ¶ 15, quoting *Masitto* at 66, and citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus ("[w]here an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court"). "Likewise, whether a parent, through words and conduct, has agreed to share legal custody with a nonparent is also a question of fact." *Id.*, citing *Mullen* at ¶ 14. A parent does not surrender his or her paramount right to custody of the child to a nonparent unless he or she surrenders that right knowingly and intelligently. *Zahler v. Batchelor*, 3d Dist. Hancock No. 5-97-16, 1997 WL 461348, *2 (Aug. 13, 1997), quoting *In re Custody of Carpenter*, 41 Ohio App.3d 182, 185 (2d Dist.1987).

{¶20} "'A valid shared-custody agreement is reviewed by the juvenile court and is an enforceable contract subject only to the court's determinations that the custodian is a "proper person to assume the care, training, and education of the

child" and that the shared legal-custody arrangement is in the best interests of the child.'" *Rowell* at ¶ 30, quoting *Mullen* at ¶ 11, quoting *Bonfield* at ¶ 48, 50.

**{¶21}** Although the trial court applied the parental-unsuitability test in addressing whether Oliver forfeited his paramount right to custody of M.G., the parental-unsuitability test is not the applicable test in this case. Instead, "the applicable test in further custody proceedings between [a parent and a nonparent is] the child's best interests." *Redmond*, 2015-Ohio-1198, at ¶ 62. Here, the trial court was not faced with an original award of custody between a parent and a nonparent; rather, the trial court was to address a modification of an original award of custody. *See id.* at ¶ 51 ("Where there is a prior order granting shared custody to a non-parent by incorporating that agreement, the parent does not have a paramount right to custody. A finding of parental unsuitability is not required in order to refuse the parent's later request for sole custody."), citing *In re DeLucia v. West*, 7th Dist. Mahoning No. 05-MA-5, 2005-Ohio-6933, ¶ 32.

**{¶22}** Indeed, the parties executed in 2007 a written shared-custody agreement, and the parties requested a juvenile court in Virginia to issue an agreed-judgment entry reflecting the parties' written shared-custody agreement. (*See* Doc. No. 1). In 2010, Emily filed with the trial court the 2007 agreed-judgment entry of the Virginia juvenile court, which the trial court registered. (Doc. No. 12). Prior to the trial court's registration of the Virginia juvenile court's 2007 agreed-judgment

entry, the Virginia juvenile court modified the shared-custody agreement by amending Violet's visitation with M.G. (*See* Doc. No. 14). The Virginia juvenile court did not modify the shared-custody agreement between the parties as to Emily sharing legal custody of M.G. with Oliver and Violet or as to Emily having residential custody of M.G. (*See id.*). Again, in 2012, the parties requested that the trial court issue an agreed-judgment entry, which maintained the terms of the original shared-custody agreement as to legal and residential custody. (Doc. No. 62).

{¶23} As such, the record reflects that Oliver agreed to an original award of custody, which was adopted by the trial court in not fewer than three judgment entries. Stated differently, Oliver previously relinquished his paramount right to custody of M.G. *See Redmond* at ¶ 1, 51. Because Oliver previously relinquished his paramount right to sole custody of M.G., the trial court did not need to consider Oliver's unsuitability in the underlying modification proceeding. *See id.*; *Purvis v. Hazelbaker*, 181 Ohio App.3d 167, 2009-Ohio-765, ¶ 10 (4th Dist.) ("Thus, once a nonparent has acquired custody, the court need not apply the *Perales* unfitness standard to a later request for custody modification."), citing *In re Kovaleski*, 4th Dist. Washington No. 05CA12, 2006-Ohio-317, ¶ 21, citing *Bragg v. Hatfield*, 152 Ohio App.3d 174, 2003-Ohio-1441, ¶ 17-19 (4th Dist.) (concluding that the parental-suitability standard applies only in original-custody determinations, not in

later applications to regain custody of a child after the "parent contracts away rights for his minor child" and that contract is codified in an agreed entry), citing *Masitto*, 22 Ohio St.3d at 68. *See also In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 38 ("A parent should be given only one unsuitability determination, which should come at the time of the legal custody hearing. After such a determination has established, or taken away, a parent's fundamental custodial rights, the focus must shift from the rights of the parents to the rights of the child. A child's rights are effectuated through the use of the best-interest-of-the-child standard for subsequent custodial modification requests.").

{¶24} Accordingly, we need not address Oliver's arguments under his first and second assignments of error pertaining to the trial court's parental-unsuitability determination because it was not necessary for the trial court to address that issue in this case. *See Redmond* at ¶ 1, 62 (concluding that "the applicable test in further custody proceedings between the parties was the child's best interests" when a parent contractually relinquishes their paramount right in a shared-custody agreement adopted by the juvenile court). Oliver's first and second assignments of error are overruled.

## Assignment of Error No. III

**It was an Abuse of Discretion and Against the Manifest Weight of the Evidence When the Trial Court Found that the Appellant Failed to Show that a Change in Circumstances of the Child Had Occurred in the Circumstances of the Child or the Custodian**

**Since the Last Decree or that a Modification is Necessary to Serve the Best Interest of the Child.**

{¶25} In his third assignment of error, Oliver argues that the trial court abused its discretion by concluding that Oliver failed to demonstrate a change in circumstances necessitating a modification of the agreed-custody entry. He also argues that the trial court's conclusion that there was no change in circumstances of the child or the custodian since the agreed-custody entry is against the manifest weight of the evidence. Oliver further argues under this assignment of error that the trial court abused its discretion by concluding that there was no change in circumstances necessitating modification of the agreed-custody entry to serve M.G.'s best interest.

{¶26} As an initial matter, we note that Oliver argues that the change-in-circumstances test under R.C. 3109.04(E)(1)(a) does not apply in a custody dispute between a parent and nonparent.[2] Oliver is wrong. The Supreme Court of Ohio squarely addressed this argument in *In re Brayden James*. 113 Ohio St.3d 420, 2007-Ohio-2335. *See also Thomas v. Moothart*, 3d Dist. Hancock No. 5-02-56, 2003-Ohio-3724, ¶ 11 ("Once an original custody award has been made, the general rule is that the award will not be modified unless, pursuant to R.C. 3109.04(E)(1)(a),

---

[2] The majority of Oliver's argument stems from his erroneous assumption that this case involves an original-custody determination. In an original-custody-determination case, Oliver is correct that the change-of-circumstances test under R.C. 3109.04 is inapplicable. Instead, in that instance, as we addressed in Oliver's first and second assignments of error, the trial court applies the parental-unsuitability test. *See In re Perales*, 52 Ohio St.2d at 97.

a change of circumstances is demonstrated."), citing *Masitto*, 22 Ohio St.3d at 68. Because we determined in Oliver's first and second assignments of error that this case does not involve an original-custody determination, the trial court properly considered the change-of-circumstances test under R.C. 3109.04(E)(1)(a).

{¶27} R.C. 3109.04(E)(1)(a) provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a).

The statute creates a strong presumption in favor of retaining the residential parent designation and precludes a trial court from modifying a prior parental rights and responsibilities decree unless the court finds all of the following: (1) a change occurred in the circumstances of the child, the child's residential parent, or a parent subject to a shared-parenting decree; (2) the change in circumstances is based upon facts that arose since the court entered the prior decree or that were unknown to the court at the time of the prior decree; (3) the child's best interest necessitates modifying the prior custody decree; and (4) one of the circumstances specified in R.C. 3109.04(E)(1)(a)(i)-(iii) applies.

*Rohrbach v. Rohrbach*, 3d Dist. Seneca No. 13-15-14, 2015-Ohio-4728, ¶ 15, citing

*In re Brayden James* at ¶ 14.[3]  As such, the threshold question in a custody-

modification case involving a parent and a nonparent is whether a change occurred

in the circumstances of the child or the child's residential custodian.  *See In re*

*Brayden James* at ¶ 14 (applying the R.C. 3109.04(E)(1)(a) framework to a parental-

rights-and-responsibility-modification case and noting that the threshold question in

that type of case is whether a change in circumstances occurred).

{¶28} "'In determining whether a change in circumstances has occurred so

as to warrant a change in custody, a trial judge, as the trier of fact, must be given

wide latitude to consider all issues which support such a change.'"  *Rohrbach* at ¶

16, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraph two of the

syllabus.  Where the trial court's change-in-circumstances determination is

supported by competent, credible evidence, its decision will not be reversed on

appeal as being against the manifest weight of the evidence.  *Bracy v. Bracy*, 3d

Dist. Allen No. 1-08-15, 2008-Ohio-3888, ¶ 9, citing *Duer v. Moonshower*, 3d Dist.

Van Wert No. 15-03-15, 2004-Ohio-4025, ¶ 15, citing *Hoitt v. Siefer*, 105 Ohio

App.3d 104, 107 (3d Dist.1995).  "'Additionally, in custody modification cases, an

appellate court must give the trial court the "utmost respect" because it has the best

---

[3] "Ohio does not recognize a parent's attempt to enter into a statutory 'shared parenting' arrangement with a nonparent * * * because the nonparent does not fall within the definition of 'parent' under the current statutes."  *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 11.  Here, we have a shared-custody agreement.

opportunity to gauge the credibility, attitude, and demeanor of each witness.'" *Id.*, quoting *Duer* at ¶ 15, citing *Miller*, 37 Ohio St.3d at 74 and *Davis* at 418. As such, a trial court's change-in-circumstances determination under R.C. 3109.04 "'should not be disturbed, absent an abuse of discretion.'" *Rohrbach* at ¶ 15, quoting *Davis* at paragraph one of the syllabus. As we noted above, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶29} In this case, the parties last executed a custody decree in 2012 when they executed the agreed-custody entry. As such, Oliver was required to demonstrate that a change in M.G.'s or Emily's circumstances occurred from the time of the agreed-custody entry by way of facts that arose since that entry, or by way of facts that were unknown to the trial court at the time of the agreed-custody entry. The magistrate concluded, "Neither party showed that a change has occurred in the circumstances of the child or the custodian since the last decree or that a modification is necessary to serve the best interests of the child." (Doc. No. 137). More specifically, the magistrate found that "no change in the circumstances of [M.G.], Emily, Violet or Oliver, has changed since the previous Entry was filed" in 2012. (*Id.*). After independently reviewing the case in light of Oliver's objections to the magistrate's decision, the trial court overruled Oliver's objections and adopted the magistrate's decision. (Doc. No. 144).

{¶30} On appeal, Oliver argues that the trial court abused its discretion by concluding that there was no change in circumstances necessitating a modification of the agreed-custody entry. In particular, he argues that the trial court's conclusion that there was no change in circumstances necessitating a modification of the agreed-custody entry is against the manifest weight of the evidence because (1) the record reflects a communication breakdown between Emily and Oliver necessitating a modification of the agreed-custody entry; (2) Emily "has threatened to withhold the agreed upon visitation with the minor child"; and (3) Emily recanted "on the oral agreement between the parties that the minor child be transitioned back to her parents' custody." (Appellant's Brief at 16).

{¶31} A change in circumstances can include a breakdown in communication between the parents—or in this case a parent and a nonparent custodian—and their inability to communicate and cooperate. *Eatherton v. Behringer*, 3d Dist. Seneca No. 13-12-23, 2012-Ohio-5229, ¶ 43, citing *Milner v. Milner*, 10th Dist. Franklin No. 99AP-13, 1999 WL 1139965, *3 (Dec. 14, 1999). Also, "[a] custodial parent's interference with a child's visitation by the noncustodial parent may be considered in determining whether a change of circumstances has occurred." *McLaughlin v. McLaughlin-Breznenick*, 3d Dist. Logan No. 8-06-06, 2007-Ohio-1087, ¶ 31, citing *Clark v. Smith*, 130 Ohio App.3d 648, 654 (3d Dist.1998), citing *Holm v. Smilowitz*, 83 Ohio App.3d 757, 773 (4th

Dist.1992), and citing *Mitchell v. Mitchell*, 126 Ohio App.3d 500, 505 (2d Dist.1998).

**{¶32}** However, "[i]n reviewing whether the evidence presented in this case demonstrates that a change in circumstances occurred, we are reminded that the change must be of substance, not slight or inconsequential." *Eatherton* at ¶ 40, citing *Davis* at 415. "In addition, R.C. 3109.04(E)(1)(a) does not require that the change be 'substantial,' nor does 'the change * * * have to be quantitatively large, but rather, must have a material effect on the child.'" *Id.*, quoting *McLaughlin* at ¶ 16, citing *Tolbert v. McDonald*, 3d Dist. Allen No. 1-05-47, 2006-Ohio-2377, ¶ 31.

**{¶33}** In his decision, regarding the parties' communication issues, the magistrate found:

> Oliver believes that he and Emily used to co-parent very well together, but since he filed for custody things have not gone as well. He testified that there is a lot of tension between Brittany [Gutierrez, Oliver's current wife,] and Emily. In October 2013 Brittany was upset with both he [sic] and Emily because they made a deal about additional visitation, but they forgot to tell her.
>
> * * *
>
> Brittany acknowledged that she once told Oliver that he needed to deal with Emily himself. She admitted being upset because Oliver

and Emily came to an agreement about visitation with [M.G.] but did not tell her.

* * *

Emily believes that Oliver and Brittany don't always act in [M.G.'s] best interest. After visitations with Violet, if [M.G.] returns with clothing or other items from Violet's residence, Brittany immediately throws these items away. On one occasion, Oliver and Brittany objected when Emily gave Violet a little extra visitation time. They objected and said that they needed to approve any changes in [M.G.'s] schedule. On another occasion Violet wanted to switch summer visitation so [M.G.] could attend a horse camp. Oliver and Brittany refused. Additionally, Brittany and Oliver always claim they have plans if she or Violet want to switch visitation periods.

* * *

For example, on one weekend there was 10 inches of snow in Kentucky, and Oliver and Brittany refused to reschedule Violet's companionship week and because they had "prior plans" to clean house that weekend.

(Doc. No. 137). The magistrate's decision was reviewed and adopted by the trial court. (Doc. No. 144).

{¶34} There is competent, credible evidence supporting the trial court's findings. The purpose of the change-in-circumstances test is to "provide stability in the life of a child" and "'spare children from a constant tug of war.'" *In re Brayden James*, 2007-Ohio-2335, at ¶ 15, quoting *Davis*, 77 Ohio St.3d at 418. In this case, the trial court executed the agreed-custody entry in 2012. Less than two years after that entry, Oliver filed his motion requesting a modification of the prior custody order. Because the trial court was in the best position to assess the credibility, attitude, and demeanor of the witnesses, this court will defer to the trial court's conclusions when they are supported by competent, credible evidence. *In re S.B.*, 11th Dist. Ashtabula No. 2010-A-0019, 2011-Ohio-1162, ¶ 92 ("It is not this court's role to construe the facts de novo and render an independent judgment. We must defer to the juvenile court's conclusions where, as here, they are fairly based on the evidence and record before the court."), citing *Hinton v. Hinton*, 4th Dist. Washington No. 02CA54, 2003-Ohio-2785, at ¶ 14-29.

{¶35} Contrary to Oliver's argument on appeal, there is competent, credible evidence that Oliver and Brittany instigated the communication breakdown. Indeed, the record reflects an incident in October 2013 in which Brittany became upset regarding an agreement between Oliver and Emily about visitation, which incited the communication breakdown between the parties. (*See* Feb. 24, 2015 Tr. at 14-15, 47-48, 91); (June 5, 2015 Tr. at 96-99). Shortly after that incident, Oliver filed

his motion requesting the custody modification in January 2014. (*Id.* at 99). Emily testified that she was hopeful that the parties could resolve the issues through mediation; however, Oliver and Brittany cancelled a scheduled mediation session between the parties. (*Id.* at 116). A party cannot rush into court and request a change in custody based on a change in circumstance resulting from a situation of their own creation. *In re S.B.* at ¶ 89 ("A juvenile court does not abuse its discretion in failing to find a change in circumstances where the moving party has helped to create or is responsible for the allegedly changed circumstances on which the motion to change custody is based."). Accordingly, we conclude that the trial court did not abuse its discretion by concluding that no change in circumstances occurred based on a communication breakdown between the parties. *See Kager v. Kager*, 5th Dist. Stark No. 2001CA00316, 2002 WL 1343266, *2 (June 17, 2002) (concluding that the trial court did not abuse its discretion by concluding that no change had occurred in the circumstances of the children despite the father-appellant's "examples of a general breakdown of communication between the parents").

{¶36} Yet, Oliver points to portions of Emily's testimony that he argues demonstrates a breakdown in communication between the parties and their inability to communicate and cooperate warranting a modification. However, when read in context, the portions of the record to which Oliver directs us do not reflect conduct constituting a change in circumstances. Indeed, the portions of the record to which

Oliver directs us reflect the struggle between three parties sharing legal custody of a minor child—namely, their attempts to schedule vacation and visitation time to accommodate the schedules of all of the parties. (*See* June 5, 2015 Tr. at 111, 115, 121, 138, 165). Illustrative of the tenuous situation between the parties is Emily's response to her trial counsel's prompt to "talk a little bit about this go-between situation you have been put in":

> Yeah. I, since Brittany came into the relationship, honestly, Oliver and Violet, to my knowledge have never really communicated the best. I have kind of played the go between, between the two of them. I am not saying it's the greatest position to be put in. But for the sake of [M.G.], I have tried to make where I am coming from known to both parties. She deserves a relationship with her father. She deserves a relationship with her mother. There's been plenty instances [sic] they have not agreed. I have had to make a decision. They still not agreed [sic].

> But even as recently as a month ago, I am trying to get questions answered that Violet had sent to Oliver. He is not responding. I like, a couple of times said, *Hey, can you answer this?* I would say since last year, even air [sic] communication has broke down. So I have only been dealing with Oliver. Brittany has not communicated with

me at all. But even then, Oliver is not wanting to communicate as well. If he does, it's like, *You are threatening me. You are being a bully*.

And I am just trying to honestly mediate between them and say this is what she is asking for. Can this work out? And it's just…I been [sic] playing mediator for a year.

(Emphasis sic.) (*Id.* at 115-116). (*See also id.* at 150-151).

{¶37} Second, Oliver argues that the trial court's conclusion that there was no change in circumstances necessitating a modification of the agreed-custody entry is against the manifest weight of the evidence because the record reflects that Emily interfered with or withheld visitation time. Oliver directs us to Emily's testimony regarding hiring a babysitter that he argues demonstrates a change in circumstances. The magistrate found that Emily "began using a babysitter instead of calling [Oliver and Brittany] for child care duties." (Doc. No. 137). Emily testified that she hires a babysitter instead of asking Oliver and Brittany to care for M.G. because Oliver "is not available during those times," and it provides M.G. the opportunity to spend time with Emily's children, whom Emily considers to be M.G.'s siblings. (June 5, 2015 Tr. at 165). Notwithstanding Oliver's argument that Emily has interfered with or withheld visitation time, we conclude that the record demonstrates that Emily encouraged M.G.'s relationship with Oliver. *See McLaughlin*, 2007-Ohio-1087, at

-24-

¶ 35 (concluding that there was "insufficient evidence to find a change of circumstances based upon interference with visitation, interference with communication, or a parent negatively discussing the nonresidential parent"). Indeed, Emily testified, for instance, that she does not prohibit M.G. from communicating with Oliver and Brittany and that she tries to accommodate additional visitation time between Oliver and M.G. (*See id.* at 140-142, 146, 149-150, 164).

{¶38} Third, Oliver argues that the trial court's conclusion that there was no change in circumstances necessitating a modification of the agreed-custody entry is against the manifest weight of the evidence because the record reflects that Emily "recanted" the parties' "oral agreement" to transition M.G. "back into her parents' custody." (Appellant's Brief at 16). Based on our discussion in Oliver's first and second assignments of error regarding the shared-custody agreement executed by the parties, which was executed by the trial court not fewer than three times, including the agreed-custody entry issued in 2012, Oliver's argument is erroneous. Oliver agreed to the 2012 entry reflecting the shared-custody agreement between the parties because it was convenient for him at the time. Advancing his argument about an oral agreement between the parties now is not only self-serving but also flies in the face of the intent of a judicially recognized shared-custody agreement and the purpose of the change-in-circumstances test under R.C. 3109.04(E), which,

as we noted above, is to "provide stability in the life of a child" and "'spare children from a constant tug of war.'" *In re Brayden James*, 2007-Ohio-2335, at ¶ 15, quoting *Davis*, 77 Ohio St.3d at 418.

{¶39} For these reasons, we conclude that the trial court's conclusion that there was no change in circumstances necessitating a custody modification is supported by competent, credible evidence and is not against the manifest weight of the evidence. As such, the trial court did not abuse its discretion by concluding there was no change in circumstances necessitating a custody modification. *McLaughlin*, 2007-Ohio-1087, at ¶ 38. ("After reviewing the entire record, we hold that the trial court did not abuse its discretion in finding no change of circumstances had occurred. The facts and circumstances in this case, even when considered together, do not constitute a change of circumstances to warrant [a modification of the custody order.").

{¶40} Because the trial court concluded that there was no change in circumstances, it did not need to inquire into M.G.'s best interest. *Kenney v. Kenney*, 12th Dist. Warren No. CA2003-07-078, 2004-Ohio-3912, ¶ 22, citing *Bauer v. Bauer*, 12th Dist. Clermont No. CA2002-10-083, 2003-Ohio-2552, ¶ 27 and *Wilburn v. Wilburn*, 144 Ohio App.3d 279, 288 (2d Dist.2001). *See also Eatherton*, 2012-Ohio-5229, at ¶ 39 (noting that the change-in-circumstances "finding should be made prior to weighing the child's best interest"). As such, we

decline to address any argument Oliver advances regarding M.G.'s best interest under his third assignment of error. Oliver's third assignment of error is overruled.

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**