[Cite as *Houle v. Broters*, 2025-Ohio-4321.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

ROBERT HOULE,

    PLAINTIFF-APPELLANT,

  v.

ZAYNA BROTERS,

    DEFENDANT-APPELLEE.

CASE NO. 13-25-03

OPINION AND
JUDGMENT ENTRY

Appeal from Seneca County Common Pleas Court
Juvenile Division
Trial Court No. 21570133

Judgment Affirmed

Date of Decision:  September 15, 2025

APPEARANCES:

    *Robert Houle,* Appellant

    *Lisa A. Miller* for Appellee

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant Robert Houle ("Father") brings this appeal from the judgment of the Common Pleas Court of Seneca County, Juvenile Division modifying his parental rights and responsibilities. On appeal, Father alleges that the trial court failed to conduct an independent review of the Magistrate's findings of fact and conclusions of law and erred by granting the modification for multiple reasons. For the reasons set forth below, the judgment is affirmed.

*Case History*

{¶2} Father and defendant-appellee Zayna Broters ("Mother") are the parents of a minor child ("the child") born in 2015. On July 23, 2015, Father filed a complaint for custody of the child. The complaint alleged that Mother suffered from "severe health and mental health problems" and requested that Father be named the residential parent. The parties entered an agreed parenting plan on November 17, 2015, which designated Father as the residential parent. On December 15, 2015, Father filed a motion to modify the visitation to restrict Mother to supervised visitation. The trial court appointed a guardian ad litem ("GAL") and the GAL filed her report on April 1, 2016. The GAL noted that both parents loved the child and wanted a stable environment for her. The GAL's recommendation was that Father should be named the residential parent and Mother should have regular and frequent supervised visitation. Eventually the parents reached an

agreement and a consent judgment entry keeping Father as the residential parent and awarding supervised visitation to Mother was filed.

{¶3} On August 5, 2016, Mother filed a motion for reallocation of parental rights and responsibilities requesting that she be named the residential parent due to Father's interference with her visitation and her completion of counseling. The GAL was reappointed for a review and the trial court ordered both parties to submit to a psychological evaluation. The GAL filed her report on October 11, 2017. The GAL recommended that Father remain the residential parent and Mother should continue to have supervised visits. The GAL also recommended that both parents should attend counseling to address their issues and that Mother should apply for unsupervised visitation once she has attained stable housing. On November 30, 2017, the parties entered a consent judgment entry retaining Father as the residential parent.

{¶4} On November 5, 2021, Mother filed a motion for reallocation of parental rights and responsibilities requesting the trial court to modify her visitation. Upon review of the visitation records from Patchworks House (the supervisor of the visits), the trial court modified the visitation to be unsupervised in accordance with Local Rule 8 with transfers to occur at Patchworks House. The GAL was once again appointed. The GAL submitted her updated report on June 27, 2022. The GAL noted that the child indicated that she enjoyed going to Mother's home and wished to continue doing so. The GAL expressed concern regarding Father's desire "to be

in total control of every aspect of [the child's] life." June 27, 2022 GAL Report at 4. Based upon her observations, the GAL recommended that Mother's motion for Local Court Rule parenting time be granted. On August 3, 2022, the parties reached an agreement keeping Father as the residential parent and granting unsupervised local rule parenting time to Mother.

{¶5} On May 22, 2023, Mother filed a motion to be named the residential parent alleging that there was a change in circumstances in the child's home, i.e. Father's mental state had changed to being derogatory and harsh towards the child. The trial court reappointed the GAL. The GAL filed her report on December 12, 2023. According to the GAL, the child indicated that "Dad is very sad and yells a lot". Dec. 12, 2023 GAL Report at 5. The child indicated that Father "spanks" her hard and that Father tells her everything that happens in court and blames Mother claiming Mother is taking money away from him. The GAL was concerned that Father was exposing the child to adult things, the child was receiving corporal punishment, and Father did not agree to allow the child to receive counseling or be tested for ADHD. The GAL recommended that Mother be named the residential parent with Father being granted parenting time per the local rule.

{¶6} Hearings on the pending motion was held before a magistrate on December 20, 2023, May 9, 2024, and July 30, 2024. On August 13, 2024, the magistrate granted the Mother's motion to reallocate parental rights and responsibilities, finding a change of circumstances, naming Mother the residential

parent, and awarding parenting time to Father.  The trial court approved and adopted the decision of the magistrate on the same day.  Father filed objections to the magistrate's decisions on August 26, 2024.  On December 6, 2024, Father supplemented his objections.  Mother filed her response to the objections on December 10, 2024.  On December 18, 2024, the trial court overruled the objections to the magistrate's decision and adopted the decision of the magistrate.  Father appealed from this judgment and raised the following assignments of error on appeal.

### First Assignment of Error

**The trial court erred by failing to conduct an independent review of the objected matters before issuing its ruling.  The court's improper deference to the magistrate's findings constitutes an abuse of discretion in violation of Ohio Civil Rule 53(D)(4)(d).**

### Second Assignment of Error

**The trial court erred to the substantial prejudice of the appellant by modifying custody based on allegations regarding ADHD testing without substantiating the claims, violating the Fourteenth Amendment's protections of parental rights, due process, and equal protection.  The court's reliance on disputed and speculative assertions constitutes an abuse of discretion, rendering the custody determination legally unsound.**

### Third Assignment of Error

**The trial court erred by modifying custody without properly establishing significant change in circumstances.  Misapplying the "best interests" standard, and relying on unsupported, speculative findings, thus abusing its discretion under *Fisher v. Hasenjager.***

**Fourth Assignment of Error**

**The trial court erred and abused its discretion by prohibiting the parties and their counsel from accessing or referring to a court-ordered psychological evaluation and supervised visitation records, thereby violating due process and undermining the best interest determination pursuant to R.C. 3109.04, Ohio Juvenile Rule 34(B), and Ohio Civil Rule 75(D).**

For the purposes of clarity, we will ultimately address the assignments of error out of order.

*Independent Review*

{¶7} In the first assignment of error, Father claims that the trial court failed to conduct an independent review of the magistrate's opinion after Father filed objections. Appellate courts generally review a trial court's ruling on a magistrate's decision using an abuse of discretion standard. *In re J.P.*, 2016-Ohio-7574 (10th Dist.). "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv.R. 40(D)(4)(d). An independent review is equivalent to a de novo determination. *In re G.H.*, 2023-Ohio-295, ¶ 43 (6th Dist.). "Ordinarily, it is presumed that the trial court performed an independent analysis in reviewing the magistrate's decision." *Rowell v. Smith*, 2013-Ohio-2216, ¶ 35 (10th Dist.). "The

party asserting error bears the burden of affirmatively demonstrating the trial court's failure to perform the required independent analysis." *In re J.P.* at ¶ 13.

**{¶8}** Father alleges in this case that the trial court failed to conduct an independent review. Father claims the trial court did not conduct an independent review because the trial court indicated that "the Magistrate had the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." Dec. 18, 2024 Entry at 11. The requirement that there be an independent review means, among other things, that a trial court is not required to defer to a magistrate's determinations regarding credibility." *Sowry v. Todd*, 2023-Ohio-1162 (2d Dist.). However, it also does not require that the trial court reject the determinations if the record supports them. "[T]he trial court may rely upon the magistrate's credibility determinations when it reviews the magistrate's decision." *Mackenbach v. Mackenbach*, 2012-Ohio-311, ¶ 9 (3d Dist.).

**{¶9}** A review of the record in this case shows that the trial court appears to have conducted an independent review. The trial court in the judgment entry specifically stated that it had "undertaken a *de novo* review of the Magistrate's Decision, and has reviewed the information as filed." Dec. 18, 2024 Entry at 3. The trial court noted that it after its review, it concurred with the assessment of the magistrate and the recommendations. *Id*. at 15. At the conclusion of its entry, the trial court stated as follows:

> The Court has made an independent review as to all the objected matters. This included a review of all filings by the parties, the transcript of the proceedings, and a review of the applicable law. Upon the independent review, the Court ascertains that the Magistrate has properly determined the factual issues and appropriately applied the law.

*Id.* The review of the record by this Court provides no indication that the trial court did not conduct an independent review as required by law. The first assignment of error is overruled.

*Review of Records*

{¶10} In the fourth assignment of error, Father claims that the trial court erred by failing to allow counsel or the parties to review the psychological evaluation or the supervised visitation records. Initially this Court notes that the objections to the Magistrate's Decision did not raise access to the psychological reports. Civil Rule 53 requires objections to be specific and state with particularity all grounds for the objections. "Except for a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any findings of fact or legal conclusion, unless that party has objected to that finding or conclusion to the trial court." *Long v. Long*, 2010-Ohio-4817, ¶ 13 (3d Dist.). Thus, we will not address the issue of reviewing the psychological reports.

{¶11} Father did claim that the magistrate erred by failing to allow counsel to review the visitation reports. The review of reports from Patchworks House are covered by Seneca County Local Rule 1.03.

(F) As to Patchworks House observation reports, they may be transmitted to the Court at the discretion of Patchworks House unless a party requests an Order for reports to be sent to the Court. The reports will be subject to Attorney review at the Court's discretion. Inspection by pro se litigants may be permitted only by leave of Court. All Patchworks House reports held by the Court at the conclusion of the case not admitted as evidence will be destroyed.

{¶12} A review of the record shows that while the trial court had the reports from Patchworks House in the record, they were submitted in response to Mother's motion to allow her to have unsupervised visits filed on November 5, 2021. On January 6, 2022, Mother filed for permission to review the reports. On January 11, 2022, Father filed his motion for leave to review the reports. The trial court overruled both motions, noting that the local rule says availability is at the discretion of the court. The trial court noted that it had only requested the records for the purpose of determining the propriety of the temporary order. On May 9, 2022, Father again requested permission for counsel and the parties to review the reports. The trial court again ruled that only the court and the GAL would have access to the reports, denying Father's motion. On June 29, 2022, the trial court adopted a consent entry on the motion to modify visitation and granted Mother unsupervised visitation.

{¶13} The current case arises from a motion filed by Mother requesting a modification of custody and was filed on May 22, 2023. The record indicates that at no point after this date did either party file a request to review the records from Patchworks House. The magistrate stated during the trial that he would be taking

judicial notice of the reports from Patchworks House and no objection was raised by either party. Additionally, neither party at that time requested to review the records. The magistrate again noted that it had reviewed the records, including any incident reports later during the trial. Neither party raised an objection or indicated they wished to review the records at that time. As Father did not request to review the records in relation to this subject motion and did not object to the trial court indicating it would consider the reports, no error occurred by not allowing review by the parties. Additionally, the trial court did provide equal access to the reports to the parties as neither party was allowed to review them. For these reasons, the fourth assignment of error is overruled.

*Change of Circumstances and Best Interest of the Child*

{¶14} In the second assignment of error, Father claims that the trial court erred on relying on an allegation that he had refused to have the child tested for ADHD when no evidence was presented that such testing was ever recommended by a professional. Father then claims that without the conclusion regarding the ADHD testing, there would be no change of circumstances. Similarly, in the third assignment of error, Father claims that the trial court erred by finding that a change of circumstances existed and that modification of custody was in the child's best interests. Decisions concerning child custody matters rest within the sound discretion of the trial court. *Polhamus v. Robinson*, 2017-Ohio-39 (3d Dist.). Where an award of child custody is supported by a substantial amount of credible

and competent evidence, such an award will not be reversed on appeal. *Id.* To reverse an award of child custody, the appellate court must determine that the trial court's decision was unreasonable or unconscionable. *Id.*

> (E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a). The parent requesting a modification of the custody of the child bears the burden of showing a change of circumstances and that the modification is in the best interest of the child. *Fisher v. Hasenjager*, 2007-Ohio-5589. "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change, including a change in

-11-

circumstances because of the child's age and consequent needs, as well as increased hostility by one parent (and that parent's spouse) which frustrates cooperation between the parties on visitation issues." *Clark v. Smith,* 130 Ohio App.3d 648, 654 (3d Dist. 1998) quoting *Davis v. Flickinger*, 1997-Ohio-260.

{¶15} When a request for a modification of a custody decree is made, the trial court must first determine whether there has been a change in circumstances. *Brammer v. Brammer*, 2011-Ohio-2610, ¶ 17 (3d Dist.). The change need not be "substantial" nor does it have to be quantitatively large. *Id*. at ¶ 18. However, the change must be one of substance rather than slight or inconsequential. *Id*. Examples of changes of substance would include the interactions between the parents where one begins to cut out another parent, new relationships that cause hostility between the residential and nonresidential parent, and the maturation of the child requiring an adjustment by the parents. *See Davis* and *Perz v. Perz*, 85 Ohio App.3d 374 (6th Dist. 1993).

{¶16} In this case the trial court noted eight different reasons to justify the change of circumstances finding.

> 1. The child's behavior issues at school, which had worsened, causing concern to the [GAL].
>
> 2. The failure to adequately address a need for a counseling assessment, and Fathers [sic] failure to provide one.
>
> 3. The ongoing animosity between the parties.

4. The credible evidence that Father may be refusing to acknowledge the need to consider an ADHD evaluation to address the concerns of the Guardian and Mother.

5. The fact that Father has inappropriately involved the child in communications and decisions that are the purview of a parent.

6. The fact that Father has utilized law enforcement for unnecessary "welfare checks" during Mother's parenting time.

7. The fact that Father has generally refused to realistically coordinate the child's activities with Mother.

8. Father's overbearing and self-serving view of parenting, to the exclusion of Mother.

December 18, 2024 Judgment Entry at 13. Father erroneously claims that the primary basis of the trial court's determination was that he refused to agree to ADHD testing despite the fact that no evidence was presented showing that the school recommended such. A review of the record shows that the GAL testified that the child's behavior supported the suggestion that the child be tested for ADHD, it was never formally requested. This fact was before the trial court as was Father's testimony that he would agree to the testing if the school requested it. However, Father also testified that he did not believe ADHD was an issue because the child's grades were good. He also testified that he disagreed with the testimony of the teacher that the child had issues with behavior that might impede her success in school and claimed on cross-examination that the teacher was making up problems. Given his testimony, the trial court could reasonably conclude that Father was not in favor of having the child tested for ADHD.

{¶17} Even if this Court were to exclude the findings regarding the ADHD testing, the trial court listed several other factors to support its change of circumstances determination. These findings were supported by the testimony of the GAL, Mother, Father, and the child's teacher. The trial court found that the child's behavioral issues at school had worsened. The GAL and the Mother both testified that during the past year, the child's behavior in school was deteriorating. This opinion was based upon the reports on the grade cards as well as conversations with the child's teacher and the child. The GAL also testified that the behaviors causing problems for the child in school are behaviors she has seen exhibited by Father. The GAL stated that the child's behavior is getting worse and the child is getting angrier. The teacher testified that she was concerned with the child's behavior. Specifically, she indicated that the child does not listen, fails to take responsibility for her actions, requires lots of redirecting, and has many conflicts with the child's peers. The teacher testified that the child's issues occurred on a daily basis, but she only notified Mother and Father when the child's behavior "crossed a line". The teacher indicated that the child becomes annoyed when corrected and will talk back to the teachers. According to the teacher, the behaviors had not changed or improved by the end of the year. Instead, the child portrayed herself as the victim when in reality she was the one being disrespectful, not following directions and engaging in daily conflicts with her peers. The teacher

indicated that if the child's behavior continued, it would cause a problem with her future schooling.

{¶18} Next the trial court found that Father had failed to adequately address the need for a counseling assessment. The GAL recommended counseling for the child based upon her behaviors at school. The GAL testified that although Mother was in favor of getting counseling, Father did not feel it was necessary. According to the GAL, the child is afraid to fail and when she does, she gets "very, very angry." Tr. 14. The GAL spoke with the child and the child told the GAL that she does not know why she is getting so angry. The GAL recommended counseling to help the child identify her triggers. The teacher also testified that, in her opinion, counseling would benefit the child. The teacher admitted that she had not recommended it because she did not feel it was her place. When communicating with the parents, the teacher indicated that both responded and seemed concerned. However, she noted that Mother would ask questions and try to come up with ways to resolve the problems. Father would thank her for sending the information, indicate he would take care of it by punishing the child. Father sometimes failed to address the problem, instead focusing on all the activities the child was doing instead of the child's behavior in the classroom.

{¶19} The third consideration was the ongoing animosity between the parties. Father presented an extremely large exhibit showing years of text messages between the parties. A review of the messages shows that there were times that

Father and Mother were able to work cooperatively to parent the child. However, the messages also showed that there was conflict between the parties with Father frequently insisting that things should be his way. Additionally, both Father and Mother testified that there were times that they did not agree.

{¶20} The fourth finding indicated that Father "may be" refusing the ADHD evaluation. The GAL testified that in her opinion, Father was totally against having the child tested. Although the GAL admitted on cross-examination that the records do not show that the testing for ADHD was formally recommended by the school, the GAL testified that it was a suggestion. The GAL also indicated that since the child's behavior was getting worse, the need for the testing was supported. Father testified that he did not refuse the testing, but indicated he did not believe it was necessary because the child was doing well academically. When questioned about the child's behavior, Father testified that he disagreed with the teacher that there were issues, claim the teacher had made up the problems, and blamed the court issues as the basis for the child's behavioral issues. However, the issue of the child potentially having ADHD was first noted by the GAL in her 2022 report and the GAL recommended that "both parents shall work with the school to determine if the minor child is ADHD or has some other learning disability that affects her ability to focus and concentrate." Doc. 175 at 5.

{¶21} The trial court also found that Father had inappropriately involved the child in the communications and decisions of the parents. Mother testified that

Father had said he could show their text messages to the child if he wanted. The GAL testified that the child had told her that Father tells the child in detail what is happening in the court proceedings between Father and Mother. The child also indicated that Father blamed Mother for taking money from him by returning to court. This was supported by Father's admission in court that he blamed Mother for going back to court, costing him more money. The June 27, 2022 GAL report indicated that the child told the GAL that Father had told the child that Mother had lied about him in court. The GAL noted in that report that the child appeared to know more about what was happening in court than she should. In the December 12, 2023 GAL's report, the GAL noted that the child had told her that Father tells the child every detail of court and blames Mother, claiming she is taking money away from him by going back to court.

{¶22} The sixth finding was that Father had improperly utilized law enforcement for a welfare check during Mother's parenting time. A review of the record shows it is unclear whether Father actually did this. The record shows that he clearly threatened to do so and that he believed it would be proper for him to do so. The magistrate explained to Father that doing so would be problematic. If this was the sole basis for a finding of change of circumstances, it may be problematic. It was not and when taken in context with the other factors, it is not an abuse of discretion.

{¶23} The trial court also found that Father did not coordinate the child's activities with Mother and just presumed that Mother would be fine with taking the child to activities he had scheduled. A review of the record reveals this was an ongoing issue between the parties. Additionally, when Mother declined to take the child to the activities scheduled during her time, Father would threaten to disclose to the child that the reason that the child could not go was because of Mother. This could reasonably be seen as threatening to paint Mother in a negative light because of a disagreement. The December 12, 2023 GAL's report noted that Father enrolls the child in sports and other various activities without coordinating such with Mother.

{¶24} Finally, the trial court found that Father's behavior had become overbearing and self-serving in his parenting. The GAL noted that this was a concern she had as well. In the April 1, 2016 GAL's report, the GAL noted that Father was not always cooperative and did not trust Mother to parent the child. However, the GAL recommended custody be granted to Father. In her October 11, 2017 report, the GAL noted that she was concerned that Father wanted to be in total control of the child's life and had no ability to co-parent. The GAL recommended that Father retain custody, but recommended classes or counseling for both parties to learn to co-parent. On June 27, 2022, the GAL filed another report indicating that the GAL continued to have concerns with Father still wanting "to be in total control of every aspect" of the child's life. June 27, 2022 GAL's Report at 4. At

that time, the GAL recommended that Father continue to be the residential parent with Mother having unsupervised visitation. The GAL recommended that neither parent should be discussing court with the child or asking questions about what happens at the other parent's home. The December 12, 2023 report indicated that the GAL was concerned that Father was still desiring to be in total control of the child's life, that he gets upset when things do not go his way, and that Father can be overly strict with the child, sometimes going "overboard". For the first time, the GAL recommended that Mother be named the residential parent.

{¶25} Father's step-father testified that Father did a good job raising the child, but admitted that he had concerns that Father was sometimes too strict with the child. Father testified that he was unhappy that Mother returned to court to obtain unsupervised visits when she could have just asked him for such. However, Father also testified that he chose not to give Mother unsupervised visits on a regular basis until the court ordered them. Father also testified that he was unhappy that Mother had asked for the unsupervised visits because it "changed the relationship". Tr. 705. During his testimony Father accused the teacher and the GAL of making up issues and accused Mother of "manipulating" the child to the point of harassment. However, when questioned by the trial court for the basis for this belief, he presented no evidence beyond his opinion. Father's testimony repeatedly showed that he felt that as the residential parent, he should be in charge of all decisions, including what occurs at Mother's home. The text messages show

repeated instances of Father insisting on getting his way regarding the child, including on minor issues such as whether the child's hair should be curled for a parade and whether Mother's fiancé is allowed to pick up the child for visits. Additionally, the psychological report as well as the visitation summary indicated there were concerns with Father's controlling nature.

{¶26} There is no dispute that Father clearly loves the child. Father described the child as his greatest achievement and "an amazing girl." Tr. 705, 738. However, the issue before this Court is not whether Father loves the child, but whether the trial court's finding that a change of circumstances has occurred is supported by competent, credible evidence. Reviewing the record, the findings of the trial court regarding the changes in the circumstances of the child are supported by the record.

{¶27} Once a trial court has determined that there was a change of circumstances of the child or the child's residential parent, the next question is whether a modification would be in the best interest of the child. R.C. 3109.04(E)(1)(a).

> (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is

reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶28} In this case, the trial court conducted an independent review of the record and made the following findings regarding the best interests of the child.

1. [Father] has shown a failure to facilitate visitation.

2. [Father] has failed to facilitate [c]ounseling.

3. [Father] has not facilitated Mother's participation in the Seneca County Junior Princess program.

4. [Father] has had inappropriate discussions with the child regarding the litigation and his financial issues.

5. [Father] restricts [Mother's] free access to the child.

6. The parents are unable to communicate.

7. The child has a half sibling that is in the care of [Mother], and the [GAL] reported a close relationship between the two siblings.

8. Most paternal family reside out of Seneca County, and they have limited contact with the child, while the child is close to maternal grandmother who is local.

9. [Father] has enrolled the child in sports and various activities, however, he does not properly coordinate the activities with [Mother].

10. The expressed concerns of recent behavior issues in school.

11. Although [Father] testified to an issue with [Mother's] purported support arrears, he concedes that the CSEA has not filed any [c]ontempt proceedings.

Dec. 18, 2024 Entry at 14-15. These findings are supported by the evidence presented in the record. Based upon these independent findings, the trial court adopted the assessment of the magistrate.

> The fundamental basis for the Court's recommendations are the history of the case, and the observations of the Court since 2015 evidencing that Father has regressed in his self-centered position on custody, compared to the observation that Mother has matured and is now better suited to assume primary responsibility of her child. To this end, the Court determines based on all of the significant facts, the history of the case, the observation of the parties['] demeanor[s], and the evidence submitted, that the child's best interest necessitates modifying the prior custody decree, and that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

*Id*. at 15.

**{¶29}** As noted above, the question before this Court is not whether Father loves his child or even who loves the child more—Father or Mother. The question before this Court is whether the trial court abused its discretion in finding that a modification of parental rights and responsibilities is appropriate. Child custody determinations are some of the most difficult and agonizing decisions a trial court is required to make. *Brammer, supra* at ¶ 15. This Court will not reverse the trial court's judgment regarding custody as long as it is supported by a substantial amount of competent, credible evidence. *Davis, supra*. A review of the record in

this case shows that there is substantial, competent, credible evidence to support the trial court's determinations. Thus, this Court does not find that the trial court abused its discretion in modifying the allocation of parental rights and responsibilities. The second and third assignments of error are overruled.

{¶30} Having found no errors prejudicial to the appellant in the particulars assigned and argued, the judgment of the Court of Common Pleas of Seneca County, Juvenile Division is affirmed.

*Judgment Affirmed*

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

John R. Willamowski, Judge

Juergen A. Waldick, Judge

William R. Zimmerman, Judge

DATED:
/hls