[Cite as *In re G.H.*, 2024-Ohio-4943.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

In re G.H.

Court of Appeals No. OT-24-001

Trial Court No. 2021 JUV 0384

**DECISION AND JUDGMENT**

Decided: October 11, 2024

* * * * *

Howard C. Whitcomb, III, for appellee.

Mark P. Smith, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Appellant, J.F. ("mother"), appeals the December 11, 2023 judgment of the Ottawa County Court of Common Pleas, Juvenile Division, that awarded appellee, S.H. ("father"), custody of their child, G.H. For the following reasons, we affirm.

**I. Background and Facts**

**{¶ 2}** In August 2021, father filed a complaint for custody of G.H. In the affidavit attached to his complaint, father averred, among other things, that he lived in Ohio, mother lived in Kentucky, he had been G.H.'s primary caregiver and provider since the

child was born in 2014, mother had infrequently visited the child for the past six and one-half years, and mother had recently enrolled G.H. in a Kentucky school without consulting father.

{¶ 3} According to our decision in an earlier appeal of this case, a magistrate began a trial on father's complaint, but testimony on the second day revealed that there was a pending court proceeding related to G.H. in Kentucky. *In re G.H.*, 2023-Ohio-295, ¶ 27-28 (6th Dist.). After conferring with the juvenile court judge and the Kentucky judge, the magistrate announced that the Kentucky court was going to assume jurisdiction over the matter. *Id.* at ¶ 30-31. The trial court dismissed the case, father appealed, and we reversed because the trial court did not properly review the magistrate's decision. *Id.* at ¶ 45-46.

{¶ 4} On remand, a new magistrate determined that the trial court had jurisdiction and eventually held a trial. The record does not contain either a transcript of the trial or a statement of the evidence as provided by App.R. 9, so our knowledge of the facts is limited to the findings of fact in the magistrate's decision.

{¶ 5} In her findings of fact, the magistrate determined that mother and father lived together with G.H. until 2015. In 2015, father and G.H. moved to Ohio, where they lived until August 2021. Mother visited G.H. while he lived in Ohio.

{¶ 6} Mother took G.H. back to Kentucky in August 2021 and enrolled him in school there. At the end of a visit to Ohio before school started, father "withheld the child from Mother and police had to become involved to locate the child." Father did not

2.

have contact with G.H. between then and May 2023 when the court entered an interim custody order.

{¶ 7} Regarding father, the magistrate found that several witnesses testified that he and G.H. have a very loving relationship and enjoy being together. Father lives with his mother ("grandmother"). His adult nephew and the nephew's boyfriend were also temporarily living at grandmother's house. The magistrate noted that both of father's adult nephews had sought "comfort and advice" from grandmother when they experienced mental health issues in the past and had sought "appropriate intervention when necessary." The guardian ad litem did not have any safety concerns about father's house.

{¶ 8} Father has a full-time job earning $29 an hour. He also has a criminal history. In 2011, before the child was born, father pleaded guilty to reduced charges of attempted contributing to the unruliness of a minor, a second-degree misdemeanor, and complicity to obstruct justice, a fourth-degree misdemeanor. According to the magistrate, "[t]here was no evidence presented that [father] did not follow Court orders in this matter or serve his debt to society."

{¶ 9} Regarding mother, the magistrate found that she has three other children who live with her in Kentucky. Although mother "insist[ed] that [G.H.] resided with her . . ." after father moved back to Ohio in 2015, "the daycare records of the child do not support her position. Mother has no daycare records after 2015. Further, Father claimed

3.

the child as a tax exemption in all years leading up to 2021 and Mother never sought child support . . ." from father.

{¶ 10} The magistrate's factual findings demonstrated her concerns with mother's stability. Since 2015, she has lived in five cities with four different men. Mother, who was still married, currently "resides with her 'fiancé' . . ." whom she had known "for approximately one year." She helps her fiancé with his construction business, but "does not receive a paycheck for this work and has not made money in this capacity." Her income for the past four years was $0 in 2020, $10,000 to $12,000 in 2021, $21,000 in 2022, and less than $5,000 in 2023.

{¶ 11} Mother's fiancé owns the home where they live with fiancé's child and mother's four children. They were renovating the home to make room for all of them. At trial, her fiancé "testified that he had executed a 'quit claim' deed to [mother]" that purported to give her a one-fourth interest in the property. But the magistrate found that "no evidence supported the existence of the deed. The deed, if it exists, has not been filed . . . ." Mother also presented some evidence that "she is currently on various accounts at 5/3 Bank . . ." with her fiancé, but there was no evidence of when mother was added to the accounts. The magistrate believed that adding mother to the deed and bank accounts was "done out of concerns the GAL expressed of Mother's instability."

{¶ 12} Regarding G.H., the magistrate found that he is attached to his siblings. His school in Kentucky is "in the bottom 30% of schools in Kentucky." Although mother testified that she wants to send him to private school, "[n]o evidence was presented on the

4.

choice of private school, the cost associated with private school or that this was an option for [G.H.]." According to mother's fiancé, G.H. "was withdrawn after his return from visits with Father." He would not want to do daily activities and "exhibited bed-wetting and nightmares" after "longer visits." The magistrate speculated that "this behavior could also be linked to having to leave his Father's care" and noted that "at no time was the child enrolled by Mother in counseling to address the child's behavior or [her fiancé's] concerns."

{¶ 13} Although the GAL completed an investigation and filed a report, the report was not admitted into evidence at the trial, so, as required by Sup.R. 48.06(C)(2), the magistrate did not consider the GAL's recommendation. She did note that the "GAL indicated that the case was a 'toss up' but that [G.H.] wanted to live with his Father even after being told that he wouldn't live with his siblings and would not play football for the same team." The magistrate also noted that she conducted an in camera interview with G.H.

{¶ 14} In her conclusions of law, the magistrate made the following findings relative to the best-interest factors in R.C. 3109.04(F)(1):

- *(F)(1)(a) – The wishes of the child's parents regarding the child's care.*

    Each parent wanted to be named residential parent and legal custodian.

- *(F)(1)(b) – If the court has interviewed the child in chambers regarding the child's wishes and concerns as to the allocation of parental rights and*

*responsibilities concerning the child, the wishes and concerns of the child, as*

*expressed to the court.*

The magistrate "has taken the child's wishes into consideration."

- *(F)(1)(c) – The child's interaction and interrelationship with the child's*

  *parents, siblings, and any other person who may significantly affect the child's*

  *best interest.*

  G.H. is bonded with both parents, his siblings at mother's house, and his

  extended family on father's side.

- *(F)(1)(d) – The child's adjustment to the child's home, school, and community.*

  G.H. is well-adjusted to his Kentucky home and school and has friends

  and activities in mother's community. He also has friends in father's

  community and the magistrate "believed he would adjust in any school or

  community as he traditionally has."

- *(F)(1)(e) – The mental and physical health of all persons involved in the*

  *situation.*

  Neither parent has any mental or physical health issues. The magistrate

  noted the mental health issues of father's nephews, that one nephew lived with

  father on a temporary basis, and that this nephew's "issues were addressed

  appropriately."

- *(F)(1)(f) – The parent more likely to honor and facilitate court-approved*

  *parenting time rights.*

Although mother "relies heavily on the camping incident of 2021[,]"[1] the parties did not have any custody orders in place at the time, and father "had a firm, albeit wrong belief that after six plus years of living with him the child should not go [to] Kentucky and in that heated time frame acted unwisely." Since then, the parties had successfully exchanged the child numerous times, and father had not disobeyed any court orders. Mother, on the other hand, still wanted to "alienate" father by requesting supervised visits in Kentucky. Thus, the magistrate concluded that "Father appears more willing to foster a relationship with the child and his Mother than Mother is willing to foster a relationship with his Father."

- *(F)(1)(g) – Whether either parent has failed to make all required child support payments.*

    There was no child support order.

- *(F)(1)(h) – Whether either parent or any member of their household (1) has been convicted of or pleaded guilty to any criminal offense involving an act that resulted in a child being an abused or neglected child, (2) has been determined to be the perpetrator of an abusive or neglectful act that resulted in a child being adjudicated an abused or neglected child, (3) has been convicted of or pleaded guilty to domestic violence or a sexually oriented offense*

---

[1] Based on the first appeal and other filings in the record, "the camping incident" seems to refer to father refusing to return G.H. to mother around the time he filed the complaint in this case.

7.

*involving a victim who was a member of the family or household involved in this proceeding and caused physical harm to the victim, and (4) whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused or neglected child.*

Neither parent had been convicted of or pleaded guilty to an offense listed in this subsection. Although father has a criminal history, "that history was before the child was born."

- *(F)(1)(i) – Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court.*

  There was no shared parenting decree.

- *(F)(1)(j) – Whether either parent has established a residence, or is planning to establish a residence, outside of Ohio.*

  There was no evidence that either parent intended to move out of the state where they currently lived. However, mother had moved "numerous" times since 2015, while father had lived with grandmother for eight years and grandmother testified that father will inherit her house and there might be plans for grandmother to live in another house on the property.

{¶ 15} After weighing these factors and considering the testimony and evidence, the magistrate decided that father should be G.H.'s residential parent and legal custodian.

She awarded mother parenting time based on the court's long-distance companionship schedule, with the addition of long-weekend school breaks.

{¶ 16} Mother filed objections to the magistrate's decision. She argued that the decision was against the manifest weight of the evidence, against "THE INTENT ENSHRINED IN" the best-interest factors in R.C. 3109.04(F)(1), and failed to give sufficient weight to father's criminal history. Although each of mother's objections is fact-based, she did not file a transcript or affidavit of evidence with her objections or within 30 days of filing her objections, as required by Juv.R. 40(D)(3)(b).

{¶ 17} The trial court overruled mother's objections. It found that she failed to comply with Civ.R. 53(D)(3)(b)(iii), which requires that a party objecting to a magistrate's factual finding file "a transcript of *all the evidence* submitted to the Magistrate relevant to that fact or an affidavit of the evidence if a transcript is not available" within 30 days of filing objections. (Emphasis in original.) After reviewing the decision and independently determining that there were no errors of law or other defects on its face, the trial court adopted the magistrate's decision.

{¶ 18} Mother now appeals, raising two assignments of error:

The Trial Court Erred in Ascribing Inappropriate Weight Pursuant to R.C. 3109.04(F).

The Trial Court Erred in Failing To Consider Guardian Ad Litem's Testimony.

## II. Law and Analysis

### A. Our review of mother's appeal is limited to plain error.

{¶ 19} In her assignments of error, mother argues that the trial court abused its discretion by adopting the magistrate's decision. We agree with mother that we generally review a trial court's ruling on objections to a magistrate's decision for an abuse of discretion. *Boersma v. Brancatto*, 2013-Ohio-3052, ¶ 9 (6th Dist.).[2] However, because mother failed to comply with the requirements of Juv.R. 40(D)(3)(b),[3] she has waived all but plain error review on appeal. Juv.R. 40(D)(3)(b)(iv).

{¶ 20} Under Juv.R. 40(D)(3)(b)(iv), unless a party objects to a magistrate's factual findings or legal conclusions as required by Juv.R. 40(D)(3)(b), the party cannot assign the trial court's adoption of those findings or conclusions as error on appeal, "[e]xcept for a claim of plain error . . . ." Subsection (D)(3)(b)(iii) requires that a party's

---

[2] To support the proposition that "the standard of review for child custody matters is one of 'an abuse of discretion[,]'" mother cites *In re Z.C.*, 2023-Ohio-4703, a case in which the Ohio Supreme Court very specifically held that the proper appellate standard of review for permanent custody and parental rights termination cases under R.C. 2151.414 is *not* abuse of discretion. *Id.* at ¶ 18.

[3] Although the trial court cited Civ.R. 53 in its decision, these proceedings occurred in juvenile court, so Juv.R. 40 is the controlling rule. *See G.H.*, 2023-Ohio-295, at ¶ 35-36 (6th Dist.) ("Because this case originated in juvenile court, we turn to the Rules of Juvenile Procedure for additional guidance. . . . Juv.R. 40 governs magistrates in juvenile court proceedings . . . ."). However, "[t]he provisions of Juv.R. 40(D) are analogous to those of Civ.R. 53(D). Thus, the same principles applied to Civ.R. 53(D) are applicable to Juv.R. 40(D)." *Watson v. Slaughter*, 2013-Ohio-2782, ¶ 4, fn. 1 (10th Dist.), citing *In re A.W.C.*, 2010-Ohio-3625, ¶ 18 (4th Dist.); *In re W.C.*, 2013-Ohio-153, ¶ 13 (12th Dist.); *In re T.S.*, 2012-Ohio-858, ¶ 8 (9th Dist.); and *In re C.C.*, 2008-Ohio-2803, ¶ 18 (10th Dist.).

10.

objection to a magistrate's factual finding "shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Under the analogous terms of Civ.R. 53(D)(3)(b)(iii) and (iv), the Supreme Court has made clear that "[i]f a party fails to follow the procedures set forth in [subsection ](D)(3)(b)(iii) for objecting to a magistrate's findings by failing to provide a transcript to the trial court when filing objections, that party waives any appeal as to those findings other than claims of plain error." *State ex rel. Pallone v. Ohio Court of Claims*, 2015-Ohio-2003, ¶ 11.

{¶ 21} Here, mother did not file a transcript or affidavit of evidence within 30 days of filing her objections with the trial court. By the clear terms of Juv.R. 40(D)(3)(b)(iii) and (iv), she has forfeited her right to challenge any of the magistrate's factual findings on appeal, beyond arguing plain error, and we can only review her assignments of error for plain error.

**B. The trial court did not commit plain error by adopting the magistrate's decision.**

{¶ 22} In her assignments of error, mother argues that the trial court abused its discretion by improperly weighing the evidence related to the best-interest factors in R.C. 3109.04(F)(1) and by disregarding the GAL's testimony. In response, father points out that mother relies on the wrong standard of review (abuse of discretion instead of plain error) and notes that the magistrate's decision specifically mentions the GAL's opinion that she gave during her trial testimony.

{¶ 23} Plain error in a civil case is "sharply limited to the *extremely rare* case involving *exceptional* circumstances where the error . . . rises to the level of challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997). (Emphasis in original.) Based on our review of the information available to us, this is not that extremely rare case.

{¶ 24} The magistrate's factual findings, which the trial court adopted, indicate that G.H. lived with father while he was very young; father has stable housing and employment; any potential issues regarding father's nephews were of no real concern; father's criminal history was of no real concern; although father withheld G.H. from mother in 2021, the parties did not have a custody order in place at the time and father has not caused any other problems with visits or exchanges; mother has lived in five different cities with four different men since 2015; mother does not have paying employment and has not had steady income over the past four years; G.H. has good family and community relationships in Ohio and Kentucky; G.H. has had some behavioral issues after visits with father, but mother did not seek counseling for G.H.; and the GAL thought the case was a "'toss up'" but said that G.H. "wanted to live with his Father . . . ." Based on this information, it was not unreasonable for the magistrate and trial court to conclude that it was in G.H.'s best interest to name father G.H.'s residential parent and legal custodian.

{¶ 25} Because the trial court's adoption of the magistrate's decision does not demonstrate an error that "rises to the level of challenging the legitimacy of the

12.

underlying judicial process itself[,]" *Goldfuss* at 122, the trial court did not commit plain error. Therefore, mother's assignments of error are not well-taken.

### III. Conclusion

{¶ 26} For the foregoing reasons, the December 11, 2023 judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Mother is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.        
_____
                                          JUDGE
Myron C. Duhart, J.          

Charles E. Sulek, P.J.        
_____
CONCUR.                                   JUDGE

_____
                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.