[Cite as *Stults v. Hale*, 2024-Ohio-5362.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

ANTHONY D. STULTS,

     PLAINTIFF-APPELLEE,

  v.

HOPE A. HALE,

     DEFENDANT-APPELLANT.

CASE NO. 1-24-18

O P I N I O N

**Appeal from Allen County Common Pleas Court
Domestic Division
Trial Court No. DR 2012 0030**

**Judgment Affirmed**

**Date of Decision:  November 12, 2024**

**APPEARANCES:**

    *Ian A. Weber* for Appellant

    *Andrea M. Bayer* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Hope A. Hale ("Hale") brings this appeal from the judgment of the Court of Common Pleas of Allen County, Domestic Division, denying her motion for a modification of custody. Hale claims on appeal that the trial court 1) failed to consider the wishes of the child, 2) erred in finding no change of circumstances, and 3) erred by not considering the best interest of the child. For the reasons set forth below, the judgment is affirmed.

*Background*

{¶2} The child, S.S. was born to Hale and plaintiff-appellee Anthony Stults ("Stults") in 2008. Hale and Stults were divorced in 2012. At that time, the trial court named Hale as the residential parent of S.S. though S.S. alternated staying with each parent weekly. On August 9, 2017, Stults filed a motion for reallocation of parental rights and responsibilities requesting that he be named the sole residential parent. Hale subsequently filed her own motion for reallocation of parental rights and responsibilities requesting that she be named the sole residential parent. The Guardian Ad Litem at that time recommended that Stults be named the sole residential parent with Hale having parenting time every other weekend during the school year and for the summer with Stults permitted two weeks of vacation time during the summer. The magistrate noted that S.S. expressed no preference as with whom she wished to reside. The magistrate then named Stults as the residential parent and awarded visitation to Hale. Hale filed objections to the magistrate's

decision on April 18, 2018. The trial court overruled the objections and affirmed the judgment of the magistrate.

{¶3} On April 12, 2019, Hale filed a motion to modify parental rights and responsibilities and requested to be named the residential parent of S.S. The basis for the motion was that S.S. was not doing well with the parenting plan in effect and that she had expressed a strong desire to reside with Hale. Hale requested that an in camera interview with S.S. be conducted. Stults filed a response claiming there was no substantial change of circumstances. After speaking with S.S., the trial court noted that S.S. had indicated that she wanted her parents to go back to the arrangement where they shared her parenting. When informed that neither parent had requested a shared parenting plan, S.S. indicated that if her parents would not share, she wanted to live with Hale. The trial court also noted that the parties both admitted that previously S.S. wanted the parties to share her parenting or, if that was not possible, to reside with Hale. The trial court then determined on March 19, 2020, that since S.S.'s wishes had not changed, there was no change of circumstances and denied the motion for modification.

{¶4} On September 20, 2022, Hale again filed a motion to modify parental rights and responsibilities and requested to be named the residential parent of S.S. According to Hale, the change of circumstances arose from changes with S.S.'s mental health, psychological issues, and desire to live with Hale. During the in camera interview on September 12, 2023, S.S. testified that in the prior year Stults

has had more angry outbursts and saying hurtful things. S.S. also indicated that when Stults is angry he will throw things and yell about once a week or so. S.S. also indicated that Stults gets angry when she exhibits symptoms from her sensory issues and her obsessive compulsive disorder ("OCD"). According to S.S., she has issues with germs and has asked Stults not to touch her belongings that have been sterilized. Stults will still touch them, claim that he can touch anything he wants and then walks away, slamming the door, and yelling. S.S.'s therapist spoke with him about it and he agreed to be more understanding, but did not follow through. When at Stults' home, S.S. feels frustrated and upset. At her mother's, S.S. does not feel as stressed. When the trial court asked S.S. what would happen if nothing changed, her response was "I'm going to have a huge problem." Tr. 18. S.S. indicated that when she returned to Stults' from her mother, her depressive state got "really bad" and she does not feel like she can pull herself out of it. Tr. 19. S.S. identified Hale as her support person. In S.S.'s opinion, she would be better living with Hale because when she is with Hale, she feels better. S.S. requested that she live with Hale and that Stults have visitation every other weekend and on Wednesday evenings. S.S. testified that she has wanted to leave Stults' home for a long time, but hesitated to express the desire because she was "fearful of [her] father and his reaction". Tr. 22-23. When S.S. has mentioned the idea to Stults he makes comments that make her feel guilty and more depressed. S.S. also indicated that at Hale's home, she has her step-siblings with whom she has a close relationship.

**{¶5}** Hale indicated that she was fearful of Stults and his reactions to her choosing to live with Hale. S.S. testified that when she told Stults she wished to live with Hale, he would try to make her feel guilty. S.S.'s opinion of her parents is that Hale is supportive and S.S. can go to Hale for everything, while she cannot communicate with Stults at the time of the 2023 interview because she does not believe he listens to her.

**{¶6}** A hearing was held on Hale's motion on February 8, 2024. Testimony was presented by both Hale and Stults. Sergeant Benjamin Moser ("Moser") testified on behalf of Stults. Moser testified that he responded to a call on July 5, 2019 to a complaint of a domestic dispute at Hales home.[1] Hale's fiancé admitted they had an argument which had become physical and that alcohol had been a contributing factor. Both Hale and her fiancé were issued citations for disorderly conduct, a minor misdemeanor. Both entered guilty pleas and paid a fine. Moser did not remember whether a report was made to the Department of Job and Family Services, but his report does not indicate this occurred. Since that one incident, no further incidents have occurred.

**{¶7}** Stults was called to testify on cross-examination. He testified that S.S. lives with him and attends Bath High School where she earns As and Bs. At the time of the hearing, S.S. was attending school online due to her mental health issues.

---

[1] This incident occurred while the prior motion for a modification of parental rights and responsibilities were pending.

S.S. has been diagnosed with anxiety, depression, OCD, and PTSD and was officially diagnosed with them in November of 2022. Stults did not believe S.S.'s issues had gotten worse. S.S. was originally diagnosed with anxiety and depression a couple years prior and began seeing a therapist then. The therapist was changed to her current therapist when the original one indicated that she needed a "more qualified professional", so she started seeing the current one in November of 2022. The diagnosis for OCD and PTSD were the only changes from the prior treatment plan. Stults testified that he wanted S.S. to resume in person school and worked with the school to do that, but it has been tabled a few times on the advice of S.S.'s therapist. Stults does not believe there have been any changes and that everything is "normal" because he is addressing her mental health needs. Stults admitted that from August to October, S.S. was not completing her assignments and not logging into her online class for the required hours. By December of 2023, S.S.'s grades were suffering and she may have had a 2.0 average at best for the first quarter. However, by the end of the second quarter, she had a "B" average. Stults checks S.S.'s compliance with her online school requirements weekly. Stults was concerned that if S.S. went to live with Hale, she would not complete her schooling because Hale's older children did not complete school. Stults is also concerned that Hale may be being abused because of the 2019 incident and he does not want S.S. to be exposed to that. Finally Stults did not believe that Hale could provide for S.S. financially like he could.

{¶8} Hale testified that she and her fiancé live in a home in Defiance. According to Hale, the incident in 2019 did not involve anyone punching anyone, but rather her fiancé grabbing her arm and pulling it behind her back while trying to grab something from her hand. Since then, Hale and her fiancé have attended counseling and started going to church. Since the 2019 incident, there have been no more altercations. Hale testified that she believes the modification of custody would be in S.S.'s best interest because S.S. is able to open up to her about what is happening in her mind. Hale indicated that S.S. tends to shut down when she gets upset and Hale handles this by reminding S.S. that it is okay to talk about what is bothering her rather than yelling at her. Hale speaks with S.S.'s counselor about every two weeks. Hale indicated that when S.S. comes to her home, she has to immediately sanitize all her belongings and sanitize herself. Anything that S.S. touches, she needs to have it sanitized. Once S.S. gets everything clean, she is happy at Hale's home. S.S. likes to spend time with Hale and with her step-sisters. S.S. likes to cook and wants Hale to teach her to sew because S.S. likes fashion design. When at Hale's house, S.S. is "pretty positive and outgoing." As to her finances, Hale testified that she works usually four or five days a week for SAS Retail Odyssey and one day at Big Lots. The hours for SAS Retail Odyssey vary from 30 to 60 hours a week. Hale testified that she is seeking the modification of custody due to the decline in S.S.'s mental health since the 2020 determination. Additionally, S.S. is now attending school online.

{¶9} On cross-examination Hale admitted that she made $12,400 in 2020, $16,500 in 2021, and $28,000 in 2022. Hale indicated that her fiancé pays for the taxes, insurance, and electric, but indicated that she paid for the groceries and household supplies. Hale denied that she was financially dependent upon her fiancé and indicated that if she was not with him, she would just find additional work to make ends meet. Hale admitted that she had not sought help for alcohol treatment. Hale denied that S.S.'s PTSD was the result of the one incident between Hale and Hale's fiancé. Hale admitted that both of her older children had quit school when they were old enough to do so, but testified that her son obtained his GED. Hale testified that she wanted S.S. to return to in person schooling, but disagreed with Stults as to the timing. Hale wanted to wait until the counselor said S.S. was ready. Hale admitted that Stults enrolled S.S. in mental health services and has taken her to her appointments. Hale also admitted that S.S. may have been in counseling before the last order with the original counselor, but could not give a date because she found out about the counseling when S.S. told her, not when Stults started it. Hale admitted that S.S.'s desire to live with her had not changed, but that the situation has changed. On re-direct, Hale testified that in her opinion, S.S.'s mental health issues have gotten worse since the 2020 hearing.

{¶10} Abigail Miller ("Miller") testified that she is S.S.'s current therapist and has been seeing S.S. since October of 2022. Miller diagnosed S.S. with generalized anxiety, OCD, and PTSD. These diagnoses all affect her ability to

function. Miller was not able to disclose anything S.S. told her in therapy, but was granted permission to tell the court that S.S. wanted to live with Hale. This desire has been an ongoing one for the length of the therapy. Miller testified that S.S.'s truancy during the 2021-2022 school year was coming from S.S.'s "significant anxiety". Tr. 112. Because of that, Miller worked with S.S., the school, Stults, and Hale to arrange for her to enroll in the digital academy. Both parents were originally supportive. Over the school year, attempts have been made to return S.S. to in person schooling, but they usually resulted in regression. Miller testified that Stults brings S.S. to her weekly appointments regularly. During the summer when S.S. was with Hale, the appointments were in person biweekly and then via telehealth in the off week. The decision to do this was reached by Miller, S.S. and Hale. Miller testified that it would be good for S.S. to return to the classroom when "she was ready to do so." Miller indicated that S.S.'s anxiety impacts her functioning more than a typical teen girl. Miller also indicated that S.S. had developed a good relationship with the guidance counselor at Bath and he was a beneficial resource for her. Although Miller indicated that significant changes could be a stressor for S.S., Miller did not know how she would react to future changes.

{¶11} At the conclusion of the hearing, Stults moved to dismiss the motion on the grounds that there was no change of circumstances shown. The trial court agreed that there was no substantial change of circumstances and denied the motion. Hale appealed from this judgment and raised the following assignments of error.

**First Assignment of Error**

**The trial court abused its discretion when it declined to consider the minor child's expressed preference to live with mother, along with minor child's advancing age since entry of the parties' divorce decree and other intervening events in the minor child's life in their totality in determining that there were no changed circumstances to permit a modification of parental rights and responsibilities.**

**Second Assignment of Error**

**The trial court abused its discretion when it decided that no change of circumstances had occurred to warrant an examination of [the child's] best interests.**

**Third Assignment of Error**

**The trial court abused its discretion when it failed to determine appellant's requested modifications is in [the child's] best interest and that any harm potentially caused by appellant's requested modifications is outweighed by its advantages based on the virtually unopposed testimony and evidence presented in the hearing and in the in camera interview.**

*Change of Circumstances*

{¶12} Hale argues in the first and second assignments of error that the trial court erred in finding no change of circumstances. Modification of a prior custody decree is governed by R.C. 3109.04(E)(1)(a).

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless if finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree,

unless a modification is in the best interest of the child and one of the following applies:

(i)     The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii)    The child, with the consent of the residential parent or of both prents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii)   The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶13} R.C. 3109.04(E)(1)(a). "The statute creates a strong presumption in favor of retaining the residential parent designation and precludes a trial court from modifying a prior parental rights and responsibilities decree unless the court finds all of the following: (1) a change occurred in the circumstances of the child, the child's residential parent or a parent subject to a shared-parenting decree, (2) the change in circumstances is based upon facts that arose since the court entered the prior decree or that were unknown to the court at the time of the prior decree; (3) the child's best interest necessitates modifying the prior custody decree; and (4) one of the circumstances specified in R.C. 3109.04(E)(1)(a). *Rohrbach v. Rohrbach*, 2015-Ohio-4728, ¶ 15 (3d Dist.). The threshold question in determining a motion to modify custody is whether a change of circumstances has occurred. *Polhamus v. Robinson,* 2017-Ohio-39, ¶ 27 (3d Dist.).

**{¶14}** In *Polhamus*, the father filed a motion to modify the shared parenting agreement he had with a non-parent, the child's aunt.[2] The father argued on appeal that there were changes of circumstances because 1) there was a breakdown in communication between father and the aunt, 2) the aunt was threatening to withhold visitation, and 3) the aunt had violated their oral agreement to begin transitioning the child back to the parents. *Polhamus* at ¶ 30. The father argued that these were changes of circumstances to justify modification of the custody agreement. This Court disagreed.

**{¶15}** The change of circumstance must be one of substance, not slight or inconsequential to support a modification of custody. *Davis v. Flickinger*, 1997-Ohio-260. This means that the change has a material effect on the child. *Brammer v. Brammer*, 2011-Ohio-2610 (3d Dist.). "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change. *Id.* at paragraph two of the syllabus. Thus, this Court reviews such decisions under an abuse of discretion standard. *In re M.G.*, 2024-Ohio-695 (3d Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Barto v. Barto*, 2008-Ohio-5538 (3d Dist.). "Where the trial court's change-in-circumstances determination is supported by competent,

---

[2] Although the facts are different in *Polhamus* as they involved a shared parenting agreement between a parent and a non-parent and this case is between two parents where residential custody has been allocated, the application of the law is the same.

credible evidence, its decision will not be reversed on appeal as being against the manifest weight of the evidence." *Polhamus,* ¶ 28.

**{¶16}** When reviewing whether a modification of a prior decree allocating parental rights and responsibilities is appropriate under R.C. 3109.04, a trial court must go through a two-step analysis. *Mankin v. Unverferth*, 2020-Ohio-848, ¶ 38 (3d Dist.). "The first step is to determine whether a change in circumstances has occurred since the prior decree was issued." *Id.* Only if the trial court finds a qualifying change has occurred does the trial court then consider whether the modification of the prior decree is in the best interest of the child. *Id.* "When reviewing a ruling pertaining to the allocation of parental rights, an appellate court will grant great deference to the decision of the trial court." *Id.*

**{¶17}** Here, the trial court determined that there was not a change of circumstance of substance. Hale argues that the trial court erred in making that determination. A review of the record shows that there were changes that occurred in the life of S.S. since March 20, 2020. S.S. had gone from attending classes in person to attending through a digital academy. While S.S. may have been in therapy for anxiety and depression prior to the last hearing[3], the testimony established that her condition had changed to the point where she could no longer attend school in person and that her prior therapist thought she needed more intense treatment. As a result, S.S. changed therapists and was diagnosed with OCD and PTSD in 2022.

---

[3] No testimony was presented as to when S.S. began therapy.

-13-

Additionally, S.S. had aged from being 11 years of age at the last in camera interview to being 15 at this one. S.S. indicated in the 2023 interview that she did not wish to reside with her father at all[4], while indicating in the 2019 interview that she wished to have her parents share custody or, if that was not possible, to live with Hale. These facts were not disputed by either Stults or Hale. These are changes in the life of S.S.

{¶18} Although there were changes, the changes must be of substance and not inconsequential. The trial court noted that it had conducted an in camera interview with S.S. and was considering her opinions. Even given this, the trial court determined that the changes did not reach the level of a substantive change as they did not have a material effect on S.S. The trial court specifically determined that there was no link between the changes and the residential parent. The trial court noted that Stults had appropriately addressed the changes. The record contains competent, credible evidence to support the determination of the trial court. As the change-in-circumstances determination was supported by the evidence, it will not be reversed on appeal. The first two assignments of error are overruled.

*Best Interest of the Child*

{¶19} In the third assignment of error, Hale claims that the trial court erred by failing to consider the best interest of S.S. As discussed above, the issue of

---

[4] S.S. indicated that she would have a real problem remaining with her father because he was not supportive to her needs regarding the OCD and anxiety.

-14-

whether the modification of custody is in the best interest of the child is only reached if the trial court first finds that there was a material change in circumstances. The trial court found there was no such change in circumstances and this Court has affirmed that determination. Since the trial court determined there was no change of circumstances that had a material effect on S.S., the trial court did not need to address the issue of the best interest of the child as no modification could result. The trial court did not err by not addressing the issue and the third assignment of error is overruled.

{¶20} Having found no error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Allen County, Domestic Division, is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**